**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AL JARRAU AKINS,
     Petitioner,               Civil No. 2:05-CV-73540
                             HONORABLE GEORGE CARAM STEEH
v.                       UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

     Respondent,
_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Al Jarrau Akins, ("petitioner"), presently confined at the Marquette Branch Prison in Marquette, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316. For the reasons stated below, petitioner's application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above offense following a jury trial, in which he was tried jointly, but with separate juries, with co-defendant Jamario A. Mitchell. [1] A third co-defendant, Osiris Cuesta, testified against petitioner and Mitchell in exchange for a plea bargain. A fourth co-defendant, Antwan Banks, was separately convicted of assault with intent to rob while armed. This Court

---

[1] Petitioner was also convicted of assault with intent to rob while armed, but this conviction was vacated on Double Jeopardy Grounds by the Michigan Court of Appeals.

1

recites verbatim the relevant facts regarding petitioner's conviction from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed

correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D.

Mich. 2006):

> This case arises from the attempted robbery and the shooting death of Vito Davis. Defendants and Osiris Cuesta were admittedly at the scene of the shooting. Defendants gave police conflicting statements relating to the events that led up to the shooting. However, Cuesta, who was the only eyewitness to the shooting to testify at trial, testified that on the day of the shooting, he, Akins, and Mitchell were together on Glenwood Street at about 2:00 a.m., when Antwan Banks approached Akins and had a private conversation with him. Akins then asked Cuesta and Mitchell if they wanted to help him rob someone who would shortly arrive at the home of Banks in a 2001 Cadillac. Cuesta and Mitchell agreed to help with the robbery.

> Cuesta, Akins, and Mitchell then went to Mitchell's house to retrieve a 9 millimeter automatic handgun, which Mitchell gave to Akins. The three men returned to Glenwood Street and waited on the porch of a nearby house for the target of the robbery to arrive. While waiting, Cuesta and Mitchell decided not to go along with the robbery, and the three men began walking away down the street. As they were walking away, a Cadillac drove up and stopped near the home of Banks. Without saying anything, Akins turned around and began walking toward the Cadillac. Cuesta followed, intending to go along with the robbery. Akins walked up to the passenger side of the Cadillac, hit the butt of the gun against the car window, and fired one shot into the car. The driver of the Cadillac, Davis, sped away. Akins ran behind the car, pulling the trigger of the gun but no other bullets were discharged. Davis crashed into a parked van on a nearby street and died from excessive bleeding from a gunshot wound to his leg. After the shooting, Akins and Cuesta ran from the scene. Cuesta observed Mitchell, running in front of him toward the home of Akins.

> In the days following the shooting, defendants, Cuesta, and Banks were arrested. Both defendants gave statements to the police. Akins told the police that he acted as the lookout man for the robbery, but that

Cuesta was the shooter. Mitchell, on the other hand, told the police that Akins was the shooter, but also that he (Mitchell) had supplied the gun used in the shooting and that he had expected to get paid for the use of his gun.

Akins moved to suppress his statements to the police, claiming that they were not voluntarily made. After an evidentiary hearing, the trial court concluded that the statements were made voluntarily and, thus, were admissible at trial. Akins and Mitchell were tried together and convicted by separate juries. After sentencing, the trial court vacated Mitchell's conviction of assault with intent to rob while armed because it was violative of double jeopardy, given his felony-murder conviction. This appeal followed.

*People v. Akins,* 259 Mich. App. 545, 548-49; 675 N.W. 2d 863 (2003)(internal footnotes omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 470 Mich. 880; 682 N.W. 2d 87 (2004)(Kelly, J. would grant leave to appeal). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Whether or not Petitioner was denied due process of law in violation of the U.S. Const. Ams. XIV where the assault with intent to rob while armed is not a predicate offense to felony murder and the Court of Appeals opinion to the contrary is based on Illinois statutory law, and reasoning that the only difference between the terms of "intent" and "attempt" is the spelling, which reasoning renders the Michigan assault with intent to rob statute nugatory?

II. Whether or not the State courts decision was clearly erroneous requiring reversal under the Sixth and Fourteenth Amendments, on whether the trial court refused Petitioner request substitution of counsel?

III. Whether or not Petitioner was denied Due Process of law in violation of the U.S. Const. Ams. XIV where the jury was apprised of independent evidence exclusive of the evidence against him of his guilt.

IV. Whether or not Petitioner was denied Due Process of Law in

violation of U.S. Const. Ams. VI, XIV where the prosecutor's actions and closing arguments were improper?

V. Whether or not Petitioner was denied Due Process of law in violation of the U.S. Const. Ams. VI, XIV where the trial court erred in finding Petitioners statements to be voluntary?

VI. Whether or not Petitioner was denied Due Process of Law in violation of the U.S. Const. XIV where assault with intent to rob while armed is not a predicate offense to felony murder?

## II.  Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of

state court factual determinations. 28 U.S.C. § 2254(e)(1).

 A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

4

*Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claims # 1 and 6. The challenge to the use of assault with intent to rob while armed as a predicate offense for first-degree felony murder.**

The Court will consolidate petitioner's first and sixth claims, because they are essentially the same. Petitioner contends that the underlying offense of assault with intent to rob while armed is not one of the specifically enumerated offenses within Michigan's felony murder statute that can be used as a predicate offense for first-degree felony murder.

The Michigan Court of Appeals rejected petitioner's claim, concluding for reasons stated in greater detail in its opinion, that assault with intent to rob while armed is a predicate felony under Michigan's felony murder statute, because the felony murder statute identified attempted armed robbery as a predicate offense, and attempted armed robbery was a lesser-included offense of assault with intent to rob while armed, which in turn, is a lesser-included offense of armed robbery. *Akins,* 245 Mich. App. at 550-53; *Cf. Ross v. Berghuis,* 417 F. 3d 552,

556-58 (6th Cir. 2005)(using the decision in *Akins* to conclude that assault with intent to rob while unarmed could serve as a predicate offense for first-degree felony murder in order to reject petitioner's actual innocence claim to toll AEDPA's limitations period).

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Thus, "[s]tates are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998).

The Michigan Court of Appeals concluded that assault with intent to rob while armed can be used as a predicate offense under the felony murder statute. This Court must defer to the Michigan Court of Appeals' construction of the elements of first-degree felony murder and therefore cannot grant habeas relief on this claim.

### B. Claim # 2. The substitution of counsel claim.

Petitioner next claims that the trial court judge erred in denying petitioner's request to adjourn the trial so that he could retain the counsel of his choice.

Approximately one month before the trial was set to start, petitioner wrote a letter to the trial judge, in which he requested that he be allowed to dismiss his court-appointed lawyer. Petitioner also informed the trial judge that he wished to retain a new attorney to represent him at trial, but that the attorney he sought to retain had another trial scheduled on the same date as petitioner's trial. Petitioner asked that his trial be adjourned.

At a hearing conducted approximately 2-1/2 weeks before trial, petitioner again requested that he be allowed to dismiss his court-appointed attorney because he claimed that his attorney was not good enough to represent him and because petitioner disapproved of the fact that he had seen his attorney talking with the prosecutor at a pre-trial hearing. Petitioner again told the trial court judge that the attorney he sought to retain had a schedule conflict with petitioner's trial date. The trial court informed petitioner that he was free to retain a new attorney, but that he would not adjourn the trial.

The Michigan Court of Appeals rejected petitioner's claim, finding that the trial court did not abuse its discretion in denying petitioner's request to adjourn the trial to accommodate the schedule of counsel that he sought to retain. The Michigan Court of Appeals noted that the trial court was willing to grant the petitioner's request to dismiss his appointed counsel and that the only constraint placed on petitioner was that he would not be granted an adjournment of the trial. Petitioner was free to retain any attorney he wanted, as long as that

attorney could be present for the scheduled trial date. The Michigan Court of Appeals further ruled that the trial court's reluctance to adjourn the trial was reasonable, given that petitioner was to be tried jointly with Mitchell. Thus, it would have been a heavy burden on the trial court and the other attorneys to adjourn the trial. *Akins,* 245 Mich. App. at 558-59. The Michigan Court of Appeals further noted that petitioner had no bona fide dispute with his court-appointed counsel, because his appointed counsel was responsive to all of petitioner's legitimate concerns. Petitioner's appointed attorney filed a motion to sever trials or, in the alternative, to sever the juries, as requested by petitioner. The trial court granted petitioner's request for separate juries. Although petitioner objected to appointed counsel's speaking with the prosecutor, the Michigan Court of Appeals noted that "conversing with opposing counsel before the trial is generally a prerequisite to providing effective assistance of counsel." The absence of legitimate complaints about the performance of appointed counsel, together with the fact that petitioner declined to retain new counsel to represent him on his scheduled trial date, supported the trial court's conclusion that the request for adjournment was a delay tactic. *Id.,* at 558, n. 15.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993)(*citing Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)).

A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id. (quoting Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F. 3d at 1348 *(citing to Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F. 2d 407, 413 (6th Cir. 1984). Moreover, "[a] court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske,* 836 F. 2d 1013, 1017 (6th Cir. 1988).

The main problem with petitioner's claim is that petitioner requested an adjournment of trial only one month before his trial was scheduled to start. A trial court has broad discretion in determining whether to grant a continuance or a request for the substitution of counsel, particularly when the issue is raised close to the defendant's trial date. *See United States v. Vallery,* 108 F. 3d 155, 157 (8th Cir. 1997). A defendant in a criminal case is not always entitled to a continuance for the purpose of retaining new counsel. *Id.* "If a defendant's 'attempted exercise of his choice [of counsel] is dilatory, the trial court can

require him to proceed with designated counsel.'" *Vallery,* 108 F. 3d at 157

(*quoting United States v. Reeves*, 674 F. 2d 739, 748 (8th Cir. 1982)).

In the present case, petitioner's preliminary examination was conducted

on March 13 and 15, 2001, after which he was bound over for trial to the Wayne

County Circuit Court. A calender conference was conducted before the trial

judge on April 6, 2001. A trial date was set for December 3, 2001. It was not

until approximately one month before trial, and over seven months after the case

was bound over for trial, that petitioner indicated a desire to retain counsel. In

this case, the trial court did not abuse its discretion in denying petitioner's motion

for a continuance when petitioner had ample time to retain new counsel and

seek a continuance and nothing in the record explains why the request for a

continuance was made only a month before trial. *See Lockhart,* 740 F. 2d at

413.

Moreover, "[T]he right to counsel of one's choice does not include a lawyer

whose other commitments preclude compliance with a court's reasonable

scheduling of its cases." *United States v. Delia*, 925 F. 2d 574, 575 (2nd Cir.

1991); *See also United States v. Hanhardt,* 156 F. Supp. 2d 988, 996-97 (N.D.

Ill. 2001). Trial court judges "have both the power and the duty to take measures

to control their dockets and to ensure that counsel properly prepare cases

scheduled for trial so that they can be tried and decided rather than continued

and rescheduled." *U.S. v. Hughey*, 147 F. 3d 423, 430-31 (5th Cir. 1998)(internal

quotation omitted).

In the present case, the trial court judge did not deny petitioner's Sixth Amendment right to counsel of choice when it denied his request to adjourn his trial to accommodate his retained counsel's scheduling conflict, where the request was filed only one month before trial was scheduled to begin, particularly where petitioner did not suffer from any communication problems with his court-appointed counsel, and the trial court judge was willing to permit petitioner to retain his substitute counsel if the proposed new counsel was prepared to go to trial on the scheduled date. *See United States v. Garner,* 46 Fed. Appx. 278, 287-88 (6th Cir. 2002).

Secondly, the denial of petitioner's request for a continuance of trial so that retained counsel could represent him did not violate his constitutional rights to effective assistance of counsel, because petitioner has presented no specific facts showing that his relationship with his court-appointed counsel had disintegrated into irreconcilable conflict or that communication between petitioner and his court-appointed counsel had broken down irretrievably. *See United States v. Sullivan,* 431 F. 3d 976, 981-82 (6th Cir. 2005); *Mack v. Singletary,* 142 F. Supp. 2d 1369, 1377-78 (S.D. Fla. 2001). In the present case, the facts fail to show an irreconcilable conflict resulting in a total lack of communication which prevented an adequate defense. The state courts' denial of petitioner's claim regarding his motion for substitute counsel was neither contrary to, nor an

unreasonable application of, clearly established federal law. *See Lacy v. Lewis*, 123 F. Supp. 2d 533, 551 (C.D. Cal. 2000). Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The *Bruton* claim.

Petitioner next contends that his Sixth Amendment right to confrontation was violated when Sergeant Isaiah Smith testified, over petitioner's objection, that he had evidence that was independent of Cuesta' testimony which established that petitioner was the man who shot the victim. Although Sergeant Smith never testified about the substance of this evidence, outside of the jury's presence, the prosecutor informed the trial court that Sergeant Smith was referring to the co-defendant's statement to the police. The Michigan Court of Appeals rejected petitioner's claim, finding that Cuesta's testimony established that petitioner was the perpetrator who fatally shot the victim. In addition, even if there was a question as to whether petitioner was the actual shooter, evidence of petitioner's guilt was an aider and abettor to the murder was overwhelming. Therefore, the admission of Sergeant Smith's testimony did not result in a miscarriage of justice. *Akins,* 259 Mich. App. at 560-61.

Assuming that Sergeant Smith's oblique references to "independent evidence" of petitioner's guilt violated petitioner's Sixth Amendment right to confrontation, any such error was harmless. A federal district court on habeas review of a state court conviction can directly perform a harmless error analysis

12

of a habeas petitioner's claims without first reviewing the merits of the claims, when it is in the interest of judicial economy and brevity to do so. *See Porter v. Horn,* 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003).

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-28 (1968). This rule has been extended even to cases in which the defendant's own interlocking confession was admitted against him at trial. *Cruz v. New York*, 481 U.S. 186, 193 (1987). However, a defendant's own confession may be considered on review of a conviction in assessing whether any Confrontation Clause violation was harmless error. *Id.* at 193-94; *See also Harrington v. California*, 395 U.S. 250 (1969).

In determining whether a *Bruton* violation is harmless, a reviewing court must decide "'whether the 'minds of an average jury'" would have found the State's case against a defendant "'significantly less persuasive'" had the incriminating portion of the co-defendant's statement been excluded. *Stanford v. Parker,* 266 F. 3d 442, 456 (6th Cir. 2001)(*citing Hodges v. Rose*, 570 F. 2d 643, (6th Cir. 1978)(*quoting Schneble v. Florida*, 405 U.S. 427, 432 (1972)). "An erroneous admission of a non-testifying co-defendant's confession can constitute harmless error where the defendant claiming a *Bruton* violation confessed to full

participation in the crimes." *Stanford,* 266 F. 3d at 456. In determining whether a *Bruton* violation was harmless, the reviewing court must therefore consider the nature and content of the defendant's own statement, in particular, to see whether it satisfactorily explains his part in the crime without reference to the co-defendant's statements. *Samuels v. Mann*, 13 F. 3d 522, 526-27 (2nd Cir. 1993). Also relevant is the extent to which the defendant's statement is corroborated or contradicted by other objective evidence. *Id.* at 527.

In the present case, co-defendant Osiris Cuesta testified that petitioner was the person who shot and killed the victim. Petitioner admitted to the police that he acted as a lookout man for the robbery, although he claimed that Cuesta was the shooter. Under Michigan law, a defendant can be convicted of felony murder under an aiding and abetting theory, if the evidence shows that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)). A defendant's participation in an armed robbery, while either he or his co-defendants was armed with a loaded firearm can manifest a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice

14

aforethought, so as to support a conviction for felony-murder on an aiding and abetting theory. *See e.g. Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998); *See also Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003). In addition, petitioner's role as a lookout during the robbery would be sufficient evidence under Michigan law to support petitioner's conviction for felony murder under an aiding and abetting theory. *See e.g. Terry v. Bock,* 208 F. Supp. 2d 780, 795 (E.D. Mich. 2002). Sergeant Smith's reference to independent evidence of petitioner's guilt was at best, only an indirect reference to Mitchell's statement. Because any information that was transmitted to the jury through Smith's testimony concerning petitioner's guilt was "much more forcefully related" by Cuesta's eyewitness testimony and petitioner's own confession to being an aider and abettor, any possible Sixth Amendment violation in this case was harmless error at most. *See United States v. Davis,* 177 F. 3d 552, 559-560 (6th Cir. 1999). Petitioner is therefore not entitled to habeas relief on his third claim.

**D. Claim # 4. The prosecutorial misconduct claims.**

Petitioner next contends that he was deprived of a fair trial by prosecutorial misconduct.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On

habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra*, 4 F. 3d at 1355-56. In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

Petitioner first contends that the prosecutor improperly argued to the jury that there was evidence independent of Cuesta's testimony to establish petitioner's guilt.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). In this case, however, petitioner is not entitled to habeas relief on his claim that the prosecutor made remarks that were based upon purported facts that were not introduced into evidence, because the remarks were isolated and the evidence against petitioner in this case was strong. *See Macias v. Makowski,* 291 F. 3d 447, 453-54 (6th Cir. 2002); *Byrd,* 209 F. 3d at 536. Furthermore, as the Michigan Court of Appeals indicated in its opinion, the trial court instructed the jury that it should disregard the prosecutor's remarks during closing arguments

concerning the independent evidence of petitioner's participation in the murder, instructed the jurors that defense counsel was under no obligation to cross-examine Sergeant Smith about the independent evidence, that the lawyers' statements and arguments were not evidence, and that the prosecution had the burden of proving petitioner's guilt. *Akins,* 259 Mich. App. at 262-63. Because the trial court instructed the jury to ignore the prosecutor's references to this evidence, petitioner was not denied a fair trial by the prosecutor's remarks. *Cf. United States v. Buckley,* 934 F. 2d 84, 89 (6th Cir. 1991)(district court did not abuse its discretion in denying defendant's motion for mistrial following prosecutor's inquiry of witness regarding certain physical evidence that district court had previously excluded, where witness did not answer question before defense counsel objected, district court instructed jury to ignore question, and jury never saw unduly prejudicial piece of evidence). Any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner next contends that the prosecutor improperly invoked sympathy for the victim. Even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would

have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002). This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. *Id.* Petitioner is not entitled to habeas relief on his fourth claim.

### E. Claim # 5. The involuntary confession claim.

Petitioner lastly contends that his statements to the police should have been suppressed because they were involuntarily made. Petitioner contends that his statements were involuntary because he was intoxicated from ingesting alcohol and illegal drugs prior to making the statements, because the police promised to release him if he made a statement to them, and because he had been denied his requests to speak with an attorney prior to making the statement.

Prior to trial, the trial court conducted a *Walker* hearing on petitioner's motion to suppress his confession. [2] Sergeant Isaiah Smith and Officer Anthony Jackson testified that before making both of his statements, petitioner read and initialed a document setting forth his constitutional rights. Sergeant Smith and Officer Jackson testified that they read petitioner his constitutional rights and petitioner indicated that he understood them. Lieutenant Raymon Nolan,

---

[2] *People v. Walker (On Rehearing),* 374 Mich. 331; 132 N.W. 2d 87 (1965).

Sergeant Smith, and Officer Jackson testified that petitioner did not ask for a lawyer or ask to speak to anybody before he made the statements. Sergeant Smith and Officer Jackson denied that they made any threats or promises to petitioner to induce him to make his statements. Lieutenant Nolan, Sergeant Smith, and Officer Jackson testified that petitioner did not appear to be under the influence of alcohol or drugs. Sergeant Smith and Officer Jackson testified further that petitioner never told them that he was tired, hungry, or thirsty.

Petitioner testified at the *Walker* hearing that he had smoked marijuana, drank two shots of cognac, and took an Ecstasy pill the day before he made the statements to the police. Petitioner testified that he was "high" or intoxicated when he was arrested and was still under the influence of Ecstasy when he made the statements. Petitioner testified that he informed Lieutenant Nolan that he had smoked marijuana that day. Petitioner testified that he told the police that he did not want to talk to them and wanted to call his mother so she could hire an attorney for him. Petitioner testified that the police would not let him make any calls before he made a statement. Petitioner also testified that he was handcuffed by the police. Petitioner testified that the officers promised petitioner that he would be released if he made the statements. Petitioner testified that, when he made the statements, he was both hyper from the ecstasy and tired from staying up late.

The trial court apparently believed the police officers' account of what

happened involving the circumstances surrounding the taking of the statements, as opposed to petitioner's account. The trial court commented on petitioner's demeanor while testifying at the *Walker* hearing and his memory of the events leading up to the statements, and found that petitioner's statements were voluntary. (T. 7/27/2001, pp. 88-89).

The Michigan Court of Appeals rejected petitioner's claim, noting that it does not disturb a trial court's factual findings with respect to a *Walker* hearing unless those findings are clearly erroneous. *Akins,* 259 Mich. at 566. The Michigan Court of Appeals further noted that "[T]he trial court is in the best position to assess the crucial issue of credibility." *Id.*

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 946 (E.D. Mich. 2003); 28 U.S.C. § 2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas petitioner, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). The presumption of correctness also "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Carey*

*v. Myers*, 74 Fed. Appx. 445, 448 (6th Cir. 2003) (citing *McQueen v. Scroggy*, 99 F. 3d 1302, 1310 (6th Cir. 1996)).  Although the trial court judge did not make any specific factual findings concerning petitioner's allegations, by ruling that petitioner's confession was voluntary, the trial court implicitly found that petitioner was not intoxicated at the time he made his confession, that no promises of leniency had been made to induce petitioner's confession, and that petitioner had not been denied his right to speak with counsel.  In this case, the state trial court's finding that police made no threats or promises and used no coercion to induce an incriminating statement from petitioner, so that his statement was voluntarily made, is entitled to the presumption of correctness, because petitioner has failed to present clear and convincing evidence to rebut this presumption. *Pritchett v. Pitcher*, 117 F. 3d 959, 963-64 (6th Cir. 1997). Because petitioner has failed to present clear and convincing evidence to rebut this presumption, he is not entitled to challenge the trial court's credibility determination concerning the voluntariness of his confession on habeas review. *See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 760 (E.D. Mich. 2005).

Likewise, whether a defendant understood his or her *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent.  Thus, on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows

otherwise by clear and convincing evidence. *Williams v. Jones,* 117 Fed. Appx. 406, 412 (6th Cir. 2004); *See also Terry v. Bock,* 208 F. Supp. 2d at 789. In this case, petitioner is not entitled to habeas relief, because he has failed to offer any evidence, clear and convincing or otherwise, to rebut the findings by the Michigan courts that he understood the rights that were read to him, so as to entitle him to habeas relief. *Williams,* 117 Fed. Appx. at 412.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of petitioner's claims to be debatable or that they should receive encouragement to proceed further. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: July 16, 2007

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 16, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---